**In re Jean Anne LAW, Debtor**

**Jean Anne Law Movant**

**v.**

**No Respondent.**

**No. 09–11808–TPA.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Jan. 19, 2010.

Jean Anne Law, Erie, PA, pro se.

## *MEMORANDUM ORDER*

THOMAS P. AGRESTI, Chief Bankruptcy Judge.

The Debtor in this no-asset Chapter 7 case is acting *pro se* and filed her petition on October 1, 2009. On November 9, 2009, she filed a *Reaffirmation Agreement* and related materials, Document No. 11 on *Official Form B240A* that she had entered into with Northwest Savings Bank ("Northwest") on November 4, 2009.[1] In addition to the Debtor, the *Reaffirmation Agreement* was signed by co-borrower Warner I. Law.

The *Reaffirmation Agreement* indicates that the amount to be reaffirmed is $28,296.85 at 7.125% interest, representing a conventional mortgage, Northwest Account No. 1235007836, on the property located at 1430 East 7th St., Erie, Pennsylvania. There are to be no changes to the underlying loan as part of the *Reaffirmation Agreement* and monthly payments are $340.67. A review of the *Reaffirmation Agreement* indicates that there is no presumption of undue hardship raised. Nevertheless, because the Debtor was not rep-

resented by an attorney in this matter, the Court was required to schedule a hearing on the matter. See *11 U.S.C. § 524(d)*.

At the hearing held on December 17, 2009, the Debtor appeared as directed.[2] She informed the Court that this obligation with Northwest represents the mortgage on her residence which she desires to keep. She said that her mortgage obligation was current at the time she filed her petition and has remained current since that time. In other words, this bankruptcy case was not triggered by a foreclosure action, or even the threat of such an action. By entering into the *Reaffirmation Agreement,* the Debtor's intent was to make sure she could continue to make the monthly payments and keep her house. Before concluding the hearing the Court advised the Debtor that it wanted to consider the matter further and that in the meantime she should continue to make her payments to Northwest.

The Bankruptcy Code permits reaffirmation agreements to allow a debtor to voluntarily agree to continue to be bound by an obligation that would otherwise be discharged by the bankruptcy. However, in recognition of the potential for abuse in this area, there are a number of safeguards set forth in the Bankruptcy Code. One of theses safeguards is that the debtor must be provided with certain written disclosures by the creditor at or before the time the agreement is signed. See *11 U.S.C. § 524(c)(2), 524(k)*. In this case, as indicated above, the *Reaffirmation Agreement* followed *Official Form B240A* which incorporates the various items of disclosure required by the Code. Additionally, at

---

1. The Reaffirmation Agreement is on Northwest letterhead and was presumably prepared by Northwest, although it is unclear which party first raised the possibility of such agreement.

2. While the Order scheduling the hearing required the Debtor to personally appear, it did not require the appearance of anyone on behalf of Northwest. Northwest was served with a copy of the Order, but no representative of the company appeared at the hearing.

the hearing the Court questioned the Debtor and it appeared that she did receive the legally-required disclosures, so the Court finds nothing improper concerning the *Reaffirmation Agreement* in that regard.

 A second safeguard that comes into play when a court is considering a reaffirmation agreement is whether it will cause an undue hardship on the debtor. As to what constitutes an "undue hardship," *11 U.S.C. § 524(m)* provides that a presumption of undue hardship arises if "the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under *subsection (k)(6)(A)* is less than the scheduled payments on the reaffirmed debt." If a presumption of undue hardship arises under this test and is not rebutted, the court may disapprove the agreement. In this case, Part D of the *Reaffirmation Agreement* shows Debtor with a monthly income of $1,612.00 and monthly expenses totaling $1,133.00, leaving a "surplus" of $479.00, which is more than sufficient to allow for the roughly $340.00 per month required for payment to Northwest.[3] Thus, the Court concludes that the *Reaffirmation Agreement* does not cause an undue hardship for the Debtor and it will not be disapproved on that basis.

 A final safeguard that may arise in considering a reaffirmation agreement that was negotiated by a debtor who was not represented by an attorney is whether such agreement is in the "best interest" of the debtor. See *11 U.S.C. § 524(c)(6)(A)(ii)*. This "best interest test" is broader than the relatively straightforward mathematical question posed by the undue hardship inquiry, and it allows a court flexibility in considering the particular circumstances of the case in reaching a decision as to whether a reaffirmation agreement should be approved. See, e.g., 4–524 *Collier on Bankruptcy* ¶ 524.04, text at notes 41–48 (discussing cases wherein courts have considered various factors in the best interest determination).

 Were the Court to apply the best interest test in the present case it is unlikely that the *Reaffirmation Agreement* would be approved because it does not appear to provide any benefit to the Debtor. In *In re Price,* 370 F.3d 362 (3d Cir.2004) the court held that a non-defaulting bankruptcy debtor has the option to retain property while remaining current on payments, without needing to enter into a reaffirmation agreement, a so-called "pass through" option. Cases within the Third Circuit decided since the passage of the *Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* ("BAPCPA") have concluded that the passage of that statute did not affect the availability of the pass through option as recognized in *Price.* See, *In re Baker,* 390 B.R. 524 (Bankr. D.Del.2008), *In re Hart,* 402 B.R. 78 (Bankr.D.Del.2009).[4] This Court agrees

---

**3.** A review of Schedules I and J of the Debtor's petition shows monthly income of $1612.00 and monthly expenditures of $1473.00. However, the monthly expenditures include $340.00 for the home mortgage payment to Northwest, so the schedules are consistent with Part D of the *Reaffirmation Agreement.*

**4.** *BAPCPA* did impose a requirement that debtors must either enter into a reaffirmation agreement or redeem in order to retain possession of *personal* property that is the subject of a security interest. See *11 U.S.C. § 521(a)(6).* This requirement does not apply to real property. Additionally, it appears that debtors meet their obligation under this provision even if the reaffirmation agreement is subsequently disapproved by a court, leaving

with that conclusion. Thus, the Debtor in the present case was not required to enter into the *Reaffirmation Agreement* in order to keep her home so long as she makes the required payments. The only effect of the *Reaffirmation Agreement* is to permit the Debtor's personal liability to Northwest to survive the discharge that will be granted at the end of the case. It is difficult to see how that is beneficial to the Debtor.

 Nevertheless, it is clear that the best interest test of *Section 524(c)(6)(A)(ii)* is not to be considered in this case because *Section 524(c)(6)(B)* provides that it does not apply 'to the extent that such debt is a consumer debt secured by real property." That precisely describes the debt involved here, so the Court must conclude that the *Reaffirmation Agreement* is enforceable despite the fact that the Court may not believe it to be in the best interest of the Debtor. See *Hart,* 402 B.R. at 84 ("... a reaffirmation agreement for a consumer debt secured by real property need not be approved by the court to be enforceable, regardless of whether the debtor was represented by counsel during its negotiation.").

Although approval of the subject *Reaffirmation Agreement* is not required in these circumstances, the Court does have a role to make sure the Debtor understands her legal rights. The Court will thus take this opportunity to advise the Debtor that she retains the right to rescind the *Reaffirmation Agreement* at any time before the entry of a discharge order simply by notifying Northwest. See *11 U.S.C. § 524(k)(3)(J)(i)(7).* In order to allow the Debtor an opportunity to exercise that right should she choose to do so, the Court will delay the entry of the discharge order by at least 60–days.

the pass through option available in such cir-

*AND NOW,* this *19th* day of *January, 2010,* for the reasons stated above the Court finds that the *Reaffirmation Agreement* does not cause an undue hardship and is enforceable, *provided however,* that no discharge order shall be entered in this case *before March 19, 2010,* in order to allow the Debtor an opportunity to rescind the *Reaffirmation Agreement* by notifying Northwest if she chooses to do so.

cumstance. *Baker,* 390 B.R. at 530.